UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LUDWIG CRISS ZELAYA-ROMERO,<br><br>            Plaintiff,<br><br>      v.<br><br>BUSSANICH et al.,<br><br>            Defendants. | 22 Civ. 10909 (DEH)<br><br>**OPINION<br>AND ORDER** |

DALE E. HO, United States District Judge:

Plaintiff Ludwig Criss Zelaya-Romero ("Plaintiff" or "Zelaya-Romero"), proceeding *pro se*, brings this action against (1) the United States[1] (the "Government"), (2) A.J. Bussanich and Robert Beaudouin[2] (the "MCC Defendants"), and (3) Brian Gerson[3] and Bruce Bialor (the "MDC Defendants" and together with the MCC Defendants, the "Individual Defendants") (together the "Defendants").[4]  Construed liberally, Zelaya-Romero's Complaint and Amended Complaint can be interpreted to raise two sets of claims.[5]  First, Zelaya-Romero brings claims under the Federal Tort Claims Act ("FTCA") alleging that the Government committed negligence and medical malpractice while he was detained at the Metropolitan Correctional Center in New York, New

---

[1] The United States was added as a party by Order dated December 13, 2023. *See* ECF No. 8.

[2] The Court adopts this spelling based on the parties' pleadings. Defendant Robert Beaudouin's name in this case is docketed as "Robert Beaudouln." *See generally* Dkt.

[3] The Court adopts this spelling based on the parties' pleadings. Defendant Brian Gerson's name in this case is docketed as "Gerson Brian." *Id.*

[4] *See* Compl. at 5-11, ECF No. 1; Am. Compl. at 2-3, ECF No. 18.

[5] Zelaya-Romero's Complaint, *see* Compl., and Amended Complaint, *see* Am. Compl., are frequently written in narrative format and, often, the separate paragraphs are not numbered. The Complaint and Amended Complaint also both contain numerous attachments. As a result, this Opinion cites to the applicable PDF page number throughout, unless otherwise stated. When applicable, this Opinion cites to the applicable page and paragraph number for clarity purposes.

York (the "MCC") and at the Metropolitan Detention Center in Brooklyn, New York (the "MDC").[6] Second, Zelaya-Romero brings claims under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics* alleging the Individual Defendants violated his civil rights by failing to provide him with adequate medical care.[7]

Defendants now (1) move to dismiss Zelaya-Romero's MCC-related tort claims as being time-barred pursuant to Federal Rule of Civil Procedure 12(b)(6),[8] and (2) move for summary judgment as to Zelaya-Romero's *Bivens* claims pursuant to Rule 56, arguing he failed to exhaust remedies through the Bureau of Prison's ("BOP") Administrative Remedy Program ("ARP"), as required under the Prisoner Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA").[9] The Court considers the Defendants' motion to dismiss and motion for summary judgment (collectively, the "Motions") in turn. For the reasons discussed below, Defendants' motion to dismiss Zelaya-Romero's MCC-related tort claims is **GRANTED**, and Defendants' motion for summary judgment as to his *Bivens* claims, which the Court construes as a motion to dismiss for the reasons stated below, is **DENIED**.

## BACKGROUND

### I.    Factual Background

In 2015, Zelaya-Romero had a hernia surgically repaired in Honduras.[10] Several years later, in 2017, Zelaya-Romero was incarcerated at the MCC when he claims he informed medical

---

[6] 28 U.S.C. §§ 1346(b), 2401(b), 2671-80.

[7] 403 U.S. 388 (1971).

[8] All references to Rules are to the Federal Rules of Civil Procedure. In all quotations from cases, the Court omits citations, alterations, emphases, internal quotation marks, and ellipses, unless otherwise indicated.

[9] Defs.' Mem. in Supp. at 2, ECF No. 26.

[10] Am. Compl. at 2, ¶ 1.

staff that he "was having pain due to [his] inguinal hernia."[11] Zelaya-Romero alleges that, despite informing staff of this, he "received no appropriate treatment [o]n various occasions."[12]

Specifically, throughout 2017, Zelaya-Romero alleges that he sent several "sick call[s] to MCC medical staff" but "never receive[d] any type of medical attention."[13] On September 21, 2017, Zelaya-Romero was seen by Dr. Bussanich at the MCC who prescribed him several medications, which Zelaya-Romero alleges "caused [him] to bleed out [of] [his] rectum."[14] Several days later, on September 27, 2017, Zelaya-Romero was seen by a different MCC doctor, Dr. Beaudouin, who ordered a CT scan to "rule out kidney stones."[15] The resulting radiology report, dated December 19, 2017, revealed the presence of kidney stones.[16] On March 9, 2018, Zelaya-Romero was seen by Dr. Beaudouin again, who referred him to a surgeon to "evaluate for recurrence of hernia and need for further treatment."[17] Zelaya-Romero alleges that "[t]hey did not give [him] the evaluation."[18] He also alleges that, during his time at the MCC, Drs. Bussanich and Beaudouin "[d]eliberate[ly] and [i]ntentionally di[d] not sen[d] [him] to the specialist 'surgeon' to receive the proper attention" and were "negligent and acted intentionally unconcerned."[19]

On May 14, 2018, Zelaya-Romero was transferred from the MCC in Manhattan to the MDC in Brooklyn.[20] Throughout his time at the MDC, Zelaya-Romero maintains that he

---

[11] Compl. at 6.
[12] *Id.*
[13] Am. Compl. at 2, ¶ 3.
[14] *Id.* at 2, ¶ 4.
[15] *Id.* Ex. 3, at 21.
[16] *Id.* at 23.
[17] *Id.* at 18.
[18] Compl. at 6.
[19] Am. Compl. at 2, ¶ 6.
[20] *Id.* at 2, ¶ 7.

3

"continue[d] informing" staff "ab[o]ut [his] medical condition" and made several requests for medical treatment but "did not receive" it, so he filed several "[a]dministrative [r]emedies."[21] During one appointment at the MDC on June 17, 2020, Zelaya-Romero claims that Nurse Practitioner ("NP") Gerson would not examine him and only examined a Jewish patient.[22] Later, in April 2021, Zelaya-Romero claims he reached out to MDC medical staff for the "medical assistance [he] need[ed] to receive the hernia surgery" but says that he received no such referral from NP Gerson or Dr. Bialor.[23] He alleges both NP Gerson and Dr. Bialor were deliberately indifferent, negligent, and violated his Constitutional rights.[24]

On December 3, 2021, Zelaya-Romero was transferred from the MDC to North Lake Correctional Facility ("NLCF") in Michigan, where he says he continued to "suffer[] a terrible abdominal pain."[25] While at NLCF, Zelaya-Romero says that "medical staff . . . finally provided [him] the proper and correct medical care."[26] In April 2022, Zelaya-Romero received another CT scan and was diagnosed with several hernias, and, on May 13, 2022, underwent surgery to repair them.[27]

## II. Procedural Background

In 2017, Zelaya-Romero commenced a separate action in this District against Defendants Bussanich and Beaudouin.[28] That case was assigned to Judge Analisa Torres, who by Opinion and

---

[21] *Id.* at 2, ¶ 7; *see id.* Exs. 4-5, at 25-34.

[22] *See id.* at 2, ¶ 10.

[23] *Id.* at 2-3, ¶ 11.

[24] *Id.*

[25] *See id.* at 3, ¶ 12.

[26] *Id.*

[27] *See id.*

[28] *See Zelaya-Romero v. Bussanich* ("*Zelaya-Romero I*"), No. 17 Civ. 9651, Compl., ECF No. 2 (S.D.N.Y. Dec. 7, 2017) (Torres, J.).

Order dated March 27, 2020, granted the defendants' motion to dismiss pursuant to Rule 12(b)(1) and motion for summary judgment pursuant to Rule 56.[29] Judge Torres dismissed Zelaya-Romero's claims "without prejudice to [his] reasserting the claims in a new action after exhausting the distinct administrative procedures each claim requires."[30]

Zelaya-Romero alleges that he then "completed all Administrative Remedies" before initiating the present matter on December 27, 2022.[31] In an Order dated December 13, 2023, the Court added the United States as a Defendant for purposes of Zelaya-Romero's FTCA claim.[32] Zelaya-Romero proceeded to file an Amended Complaint on March 5, 2024.[33] On July 15, 2024, Defendants filed their Motions, which were fully briefed as of November 4, 2024.[34] Zelaya-Romero subsequently filed a motion for extension of time to "reply or otherwise file an answer to Defendants' Reply Memorandum Of Law," followed by copy of his proposed reply and a "supplement."[35] On August 6, 2025, Magistrate Judge Willis, to whom this matter is referred for general pre-trial supervision, denied Zelaya-Romero's request for an extension as moot.[36]

**LEGAL STANDARDS**

**A. Rule 12(b)(6)**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

---

[29] *See id.*, Mar. 27, 2020 Order ("Torres Order") at 1, ECF No. 76.

[30] *See id.*, Torres Order at 11-12.

[31] Am. Compl. at 3, ¶ 15.

[32] *See* Order of Service, ECF No. 8.

[33] *See* Am. Compl.

[34] *See, e.g.*, Pl.'s Reply to Defs.' Mot., ECF No. 39; Defs.' Reply Mem. in Supp., ECF No. 47.

[35] *See* Pl.'s Mot. Extension Time at 1, ECF No. 49; Pl.'s Reply, ECF No. 50; Pl.'s Suppl., ECF No. 51.

[36] *See* ECF No. 53.

accepted as true, to 'state a claim to relief that is plausible on its face.'"[37]  "In assessing the complaint, [a court] must construe it liberally, accepting all factual allegations therein as true and drawing all reasonable inferences in the plaintiff['s] favor."[38]  However, the court must disregard any "conclusory allegations, such as 'formulaic recitations of the elements of a cause of action.'"[39]  "A complaint is properly dismissed where, as a matter of law, 'the allegations in a complaint, however true, could not raise a claim of entitlement to relief.'"[40]

Even under the heightened pleading standards set by *Iqbal* and *Twombly,* a court is "obligated to construe a *pro se* complaint liberally."[41]  Thus, when considering *pro se* submissions, a court must interpret them "to raise the strongest arguments that they suggest."[42]  Nevertheless, "to survive a motion to dismiss, a *pro se* plaintiff must still plead sufficient facts to state a claim that is plausible on its face."[43]

## DISCUSSION

Zelaya-Romero's Complaint and Amended Complaint, liberally construed, raise two sets of claims: (1) FTCA claims against the Government for negligence and medical malpractice at the MCC and the MDC; and (2) a *Bivens* claim against the Individual Defendants for violating his

---

[37] *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 106 (2d Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

[38] *Id.* at 106-07.

[39] *Id.* at 107 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[40] *Rubenstetn v. Ishizuka*, No. 23 Civ. 4332, 2025 WL 1489375, at *2 (S.D.N.Y. May 23, 2025) (quoting *Twombly*, 550 U.S. at 558).

[41] *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

[42] *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam).

[43] *Bodley v. Clark*, No. 11 Civ. 8955, 2012 WL 3042175, at *2 (S.D.N.Y. July 23, 2012); *see also, e.g.*, *Green v. McLaughlin*, 480 F. App'x 44, 46 (2d Cir. 2012) (summary order) ("*[P]ro se* complaints must contain sufficient factual allegations to meet the plausibility standard . . . .").

civil rights due to their alleged failure to provide adequate medical care. The Court considers Defendants' arguments with respect to each set of claims in turn.

I. **FTCA Claims**

Zelaya-Romero asserts claims for negligence and medical malpractice against MCC and MDC medical staff based on medical care provided at each respective facility.[44] However, the FTCA "provides that a party's exclusive remedy" in such cases "is a lawsuit against the United States, not the individual employees."[45] Therefore, the United States is the sole Defendant for purposes of Zelaya-Romero's tort claims.[46]

Defendants argue that Zelaya-Romero's FTCA claims based on inadequate medical care provided at the MCC must be dismissed pursuant to Rule 12(b)(6) because they are time-barred.[47] For reasons explained below, the Court agrees.

A. **Legal Standards**

"The FTCA requires that a claimant exhaust all administrative remedies before filing a complaint in federal district court. This requirement is jurisdictional and cannot be waived."[48] Indeed, "[b]efore bringing a claim against the United States for money damages for injury or loss of property caused by an employee or agent of the United States acting within the scope of his or her employment, the plaintiff must first present the claim to the appropriate federal agency, and the agency must either deny the claim or six months need to have elapsed since the plaintiff

---

[44] *See* Compl.; Am. Compl.

[45] *See* Torres Order at 6 (citing 28 U.S.C. § 2679(b)(1)).

[46] By Order dated December 13, 2023, this Court substituted the United States as a Defendant. *See* Order of Service at 3.

[47] Defs.' Mem. in Supp. at 12-14.

[48] *Celestine v. Mt. Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)).

submitted the claim."⁴⁹  A "plaintiff has the burden to plead and prove compliance with the exhaustion requirement,"⁵⁰ which "applies equally to litigants with counsel and to those proceeding *pro se*."⁵¹

"For a federal prisoner . . . to exhaust a claim involving prison conditions, he must file the requisite claim on Form SF-95 with the BOP's regional office within two years of the accrual of the claim, . . . and, if his claim is denied, appeal to the BOP General Counsel's Office."⁵²  "The Form SF-95 'must provide enough information to permit the agency to conduct an investigation and to estimate the claim's worth.'"⁵³  "If the agency denies the claim within six months after it is filed, the claimant must then initiate an FTCA action in a district court (or seek reconsideration from the agency) within six months of the notice of denial of the claim."⁵⁴  "If the claimant fails to timely comply with the FTCA's exhaustion requirement and timely commence an action in federal court, the claim is forever barred."⁵⁵

"[U]nder certain circumstances," the FCTA's two-year statute of limitations is subject to equitable tolling.⁵⁶  Typically, "a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary

---

⁴⁹ *Davila v. Lang*, 343 F. Supp. 3d 254, 272 (S.D.N.Y 2018) (citing 28 U.S.C. § 2675(a)).

⁵⁰ *Accolla v. U.S. Gov't*, 636 F. Supp. 2d 304, 307 (S.D.N.Y. 2009).

⁵¹ *Adeleke v. United States*, 355 F.3d 144, 153 (2d Cir. 2004).

⁵² *Kaid v. Tatum*, No. 20 Civ. 3643, 2024 WL 946949, at *15 (S.D.N.Y., 2024) (citing 28 U.S.C. §§ 2401(b), 2675(a)).

⁵³ *Id.* (citing *Romulus v. United States*, 160 F.3d 131, 132 (2d Cir. 1998) (per curiam)).

⁵⁴ *Id.* (citing *Cuello v. United States*, No. 11 Civ. 2216, 2013 WL 1338839, at *7 (E.D.N.Y. Mar. 29, 2013)).

⁵⁵ *Id.* (citing *Cuello*, 2013 WL 1338839, at *8).

⁵⁶ *Id.*

circumstances stood in his way."[57]  "In FTCA actions, courts apply 'the doctrine of equitable tolling in rare and exceptional circumstances, where there exist extraordinary circumstances that prevented a party from timely performing a required act and that party acted with reasonable diligence throughout the period he sought to toll.'"[58]  Moreover, "[t]he Second Circuit has instructed that district courts may apply equitable tolling when the statute of limitations has expired but 'the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.'"[59]  "A claimant's 'ignorance of the initiation procedure or statute of limitations, however, has been found insufficient to warrant equitable tolling of the FTCA, even where . . . the claimant is incarcerated, lacks legal training, and asserts that the denial letter was confusing.'"[60]

Lastly, FTCA claims "accrue[] at the time of injury,"[61] but if the time of injury is difficult to discern, then accrual may be postponed until the claimant knows "the basic facts of the injury, i.e., knowledge of the injury's existence and knowledge of its cause or of the person or entity that inflicted it."[62]

**B.  Application**

Zelaya-Romero first filed an SF-95 administrative claim with the BOP on February 8, 2021, alleging he "suffered pain after every effort to have medical staff at [the] MCC (NY) and

---

[57] *Id*. (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

[58] *Id.* (citing *Czernicki v. U.S. DOJ*, 137 F. App'x 409, 410 (2d Cir. 2005) (summary order)).

[59] *Id.* (citing *Czernicki*, 137 F. App'x at 410).

[60] *Id.* (citing *Cuello*, 2013 WL 1338839, at *8 (collecting cases denying equitable tolling)).

[61] *Kronisch v. United States*, 150 F.3d 112, 121 (2d Cir. 1998).

[62] *Barbaro v. United States*, No. 05 Civ. 6998, 2006 WL 2882975, at *2 (S.D.N.Y. Oct. 10, 2006) (citing *Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 544 (2d Cir.1999)).

[the] MDC (Brooklyn) address [his] issues."[63] Accordingly, "to the extent his FTCA claim accrued before" February 8, 2019, "it would be untimely under the two-year FTCA statute of limitations, and this Court would lack jurisdiction to address it."[64]

Zelaya-Romero's MCC-related claims accrued prior to that date. It is clear from his allegations that Zelaya-Romero "was aware that he was not receiving the treatment that he believed was necessary as early as" 2017.[65] Indeed, Zelaya-Romero claims that, on four occasions throughout 2017, he complained of "severe pain" from a hernia to MCC medical staff but "never receive[d] any type of medical attention."[66] He also complains that, during subsequent medical visits in 2017 and early 2018, Drs. Bussanich and Beaudouin failed to provide him with proper treatment for his hernia and the pain he alleges he suffered as a result.[67] These alleged failures to provide appropriate medical care form the basis of Zelaya-Romero's negligence and malpractice claims against the Government.[68] Moreover, Zelaya-Romero was transferred from the MCC to the MDC in 2018, meaning that any tort claim stemming from Zelaya-Romero's time at the MCC could not have accrued after May 14, 2018.[69] It is thus "beyond reasonable dispute" that Zelaya-Romero knew the "critical facts of injury and causation" before February 8, 2019.[70] And even though Zelaya-Romero is incarcerated, lacks legal training, and is not fluent in English, he must

---

[63] Am. Compl. at 73.

[64] *Barbaro*, 2006 WL 2882975, at *2.

[65] *Id.*

[66] Am. Compl. at 2, ¶ 3.

[67] *Id.* at 2, ¶¶ 4-6.

[68] *See id.* at 3, ¶ 16.

[69] *Id.* at 2, ¶ 7.

[70] *Barbaro*, 2006 WL 2882975, at *2.

10

still comply with the FTCA's timing requirements, which he failed to do here.[71]

Of course, the FTCA's two-year statute of limitations may be subject to equitable tolling in limited circumstances. Here, however, the Court concludes that Zelaya-Romero has failed to "establish[] the kind of 'extraordinary circumstances' required in the Second Circuit to toll the statutory period to file an FTCA claim."[72] Zelaya-Romero appears to argue that his claims did not accrue until May 13, 2022, when his hernias were surgically repaired while he was incarcerated at NLCF.[73] With respect to Zelaya-Romero's MCC-related tort claims, this argument is unavailing.[74] For the reasons discussed, the Court has already concluded that Zelaya-Romero's MCC-related tort claims accrued in 2017 and that, as a result, they are untimely. Such a conclusion is bolstered by the fact that Zelaya-Romero commenced a prior tort action against the MCC Defendants in 2017 for "for medical negligence and malpra[c]tice and lack of attention."[75]

Zelaya-Romero's second argument—that his FTCA claims cannot be dismissed because he meets the circumstances recognized in *Ross v. Blake*, 578 U.S. 632, 643-44 (2016)—is similarly unavailing. *Ross* held that the *PLRA*'s "exhaustion requirement hinges on the availability of administrative remedies."[76] *Ross* does not, however, hold that this unavailability exception applies

---

[71] *See* Compl. at 8 (indicating that Zelaya-Romero does not speak English); *see, e.g.*, *Czernicki*, 137 F. App'x at 410 (affirming district court's decision dismissing FTCA claim even though the inmate argued the limitation period should be tolled because he was unable to speak English, unable to understand legal procedures, and had mental health deficiencies).

[72] *Kaid*, 2024 WL 946949, at *17 (citing *Cuello*, 2013 WL 1338839, at *9).

[73] *See* Pl.'s Reply to Defs.' Mot. at 4.

[74] The Court takes no position, however, as to whether equitable tolling applies to any of Zelaya-Romero's MDC-related FTCA claims.

[75] *See Zelaya-Romero I*, Am. Compl. at 7, ECF No. 6.

[76] *Ross*, 578 U.S. at 642 ("Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones.").

11

to *FTCA* claims,[77] and Zelaya-Romero cites no authority supporting such a proposition. *Ross*, therefore, is inapt and does not support the conclusion that equitable tolling should apply here.

Finally, Zelaya-Romero does not otherwise allege the existence of any "extraordinary circumstance" preventing him from administratively asserting his MCC-related negligence and medical malpractice claims within two years their accrual, as required by the FTCA.[78]

Thus, Zelaya-Romero's FTCA claims based on lack of medical treatment at the MCC are time-barred, and Defendants' motion to dismiss to those claims is **GRANTED**. Notably, however, Defendants' briefs do not raise the same argument with respect to Zelaya-Romero's MDC-related FTCA claims.[79] Accordingly, Zelaya-Romero's FTCA claims based on medical care at MDC survive Defendants' motion to dismiss.

## II.     *Bivens* **Claims**

The Court next turns to Zelaya-Romero's claims that the Individual Defendants violated his civil rights due to their alleged failure to provide him with adequate medical care. Defendants argue that the Court should grant summary judgment dismissing these claims because Zelaya-Romero failed to exhaust his administrative remedies through the BOP's ARP, as required by the PLRA.[80] For the reasons discussed herein, the Court disagrees.

---

[77] *See id.*

[78] *Pace*, 544 U.S. at 418.

[79] *See* Defs.' Mem. in Supp. at 12-14 (arguing that Zelaya-Romero's FTCA claims based on MCC medical treatment, but not MDC medical treatment, should be dismissed as time-barred). There is, however, a single sentence in Defendants' Reply brief suggesting that Zelaya-Romero's MDC-related claims are also time barred: "As explained in the Government's moving brief, . . . Zelaya-Romero's claim brought under the FTCA – that the care he received from MCC and MDC medical staff constituted malpractice – is time-barred." Defs.' Reply Mem. at 6, ECF No. 47. The Court declines to consider this argument because it is raised for the first time on reply, *see id.*, and because "[i]ssues not sufficiently argued in the briefs are considered waived and normally will not be addressed," *Norton v. Sam's Club*, 145 F.3d 114, 117 (2d Cir. 1998).

[80] Defs.' Mem. in Supp. at 2.

**A.     Legal Standards**

The PLRA provides that, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."[81] The PLRA's exhaustion requirement applies "equally to *Bivens* claims, . . . and is mandatory regardless of the fit between a prisoner's prayer for relief and the administrative remedies possible.'"[82] In fact, it applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."[83]

"The administrative remedies available to the plaintiff are established by the BOP."[84] Relevant here, the BOP's ARP provides a procedure which allows "an inmate to seek formal review of an issue relating to any aspect of his/her own confinement."[85] Pursuant to the ARP "an inmate must: (1) attempt to resolve the issue informally; (2) submit a formal written Administrative Remedy Request to the institution; (3) appeal any unfavorable decision by the institution to the Regional Director of the BOP; and (4) appeal any unfavorable decision by the Regional Director to the BOP's General Counsel."[86]

Failure to exhaust "is an affirmative defense under the PLRA, and . . . inmates are not

---

[81] 42 U.S.C. § 1997e(a).

[82] *Rodriguez v. Warden, Metro. Corr. Facility*, No. 13 Civ. 3643, 2015 WL 857817, at *7 (S.D.N.Y. Feb. 27, 2015) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002); *Booth v. Churner*, 532 U.S. 731, 739 (2001)).

[83] *Porter*, 534 U.S. at 532.

[84] *Ritter v. Montoya*, 20 Civ. 114, 2021 WL 230205, at *2 (S.D.N.Y. Jan. 22, 2021).

[85] 28 C.F.R. § 542.10.

[86] *Goodall v. Von Blanckensee*, No. 17 Civ. 3615, 2019 WL 8165002, at *4 (S.D.N.Y. July 19, 2019), *report and recommendation adopted*, 2020 WL 1082565 (S.D.N.Y. Mar. 5, 2020); *see* 28 C.F.R. §§ 542.10-19.

required to specially plead or demonstrate exhaustion in their complaints."[87] Accordingly, "[d]ismissal under Rule 12(b)(6) for non-exhaustion is appropriate only if a plaintiff's failure to exhaust is evident on the face of the complaint."[88]

### B. Converting Defendants' Motion to Dismiss to a Motion for Summary Judgment

Defendants style their motion as a motion for summary judgment in the first instance.[89] In light of the procedural posture of this case, in which discovery has not yet commenced, it is appropriate instead to treat their motion as a 12(b)(6) motion to dismiss that, because it relies on materials outside of the complaint, Defendants seek to have converted to a motion for summary judgment. Pursuant to Rule 12(d), "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."[90] Here, accompanying the Memorandum of Law in Support of their Motions, Defendants submit the declaration of John Hayes (a Legal Assistant in the MDC's Legal Department) and a Local Rule 56.1 Statement purportedly demonstrating that Zelaya-Romero failed to exhaust his administrative remedies.[91] These materials clearly constitute matters outside the pleadings. Accordingly, the Court must either "exclude the additional material and

---

[87] *Jones v. Bock*, 549 U.S. 199, 216 (2007).

[88] *Pratt v. City of New York*, 929 F. Supp. 2d 314, 318 (S.D.N.Y. 2013) (citing *Jones*, 549 U.S. at 215); *see also Smalls v. Jummonte*, No. 08 Civ. 4367, 2010 WL 3291587, at *2 (S.D.N.Y. Aug. 13, 2010) ("Plaintiff was not required to plead or demonstrate his exhaustion of the DOC's established grievance procedure in his Complaint before this Court, and the fact that he did not plead exhaustion does not prove that he failed to exhaust."); *Johnson v. Westchester Cnty. Dep't of Corr. Med. Dep't*, No. 10 Civ. 6309, 2011 WL 2946168, at *2 (S.D.N.Y. July 19, 2011).

[89] *See* Defs.' Mem. in Supp. at 2 (asking the Court to "grant summary judgment" as to Zelaya-Romero's "*Bivens* claims against the Individual Defendants").

[90] Fed. R. Civ. P. 12(d).

[91] *See* ECF Nos. 30, 33.

decide the motion on the complaint alone or it may convert the motion to one for summary judgment under Rule 56 and afford all parties the opportunity to present supporting material."[92]

If the Court converts a party's motion to dismiss to a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."[93] "This is especially true when a plaintiff proceeds *pro se* and is provided no notice that the motion might be converted."[94]

Defendants filed two notices on the docket in this matter for the purpose of providing Zelaya-Romero with notice that their motion may be treated as a motion for summary judgment, as required by Local Civil Rules 12.1 and 56.2.[95] While the Electronic Case Filing system indicates that both notices were "delivered by other [non-electronic] means" to Zelaya-Romero,[96] a review of the docket reveals that Defendants never filed affidavits of service with respect to Zelaya-Romero for either the 12.1 or 56.2 notice,[97] as required by this District's ECF Rules & Instructions.[98] It is, therefore, unclear whether Zelaya-Romero ever received copies of the notices

---

[92] *Pratt*, 929 F. Supp. 2d at 319 (citing *Fonte v. Bd. of Managers of Cont'l Towers Condo.*, 848 F.2d 24, 25 (2d Cir. 1988).

[93] Fed. R. Civ. P. 12(d).

[94] *Rodriguez*, 2015 WL 857817, at *10 (citing *Hernandez v. Coffey*, 582 F.3d 303, 307-08 (2d Cir. 2009) ("[P]ro se parties must have 'unequivocal' notice of the meaning and consequences of conversion to summary judgment.").

[95] Notice of Local Rule 12.1 Statement, ECF No. 27; Notice of Local Rule 56.2 Statement, ECF No. 28.

[96] Zelaya-Romero has not consented to electronic service.

[97] *Cf. Pantoja v. Enciso*, 18 Civ. 11842, 2019 WL 6704684, at *1 n.3 (S.D.N.Y. Dec. 10, 2019) ("The defendants' factual contentions were contained in a statement under Local Civil Rule 56.1. . . . Defendants served the notice required by Local Civil Rule 56.2 on plaintiffs.").

[98] *See Electronic Case Filing Rules & Instructions*, U.S. Court for the Southern District of New York (July 24, 2023) § 9.2 ("Attorneys and *pro se* parties who are not Filing or Receiving Users must be served with a paper copy of any electronically filed pleading or other document. Service of such paper copy must be made according to the Federal Rules of Civil Procedure, the

15

and, accordingly, "understands the nature and consequences of Rule 56."[99]

"Additionally, although the Court may permit limited discovery exclusively on the issue of exhaustion, such a measure would not serve any desirable judicial end."[100] Rather, "bifurcating discovery, with additional motion practice, creates the potential for complication and delay: indeed, individuals might well be deposed first on exhaustion and again on the merits."[101] Moreover, it does not appear that "full fact discovery will be sufficiently laborious," such that it would "counter [Zelaya-Romero's] interest in a timely disposition of his suit."[102]

For these reasons, the Court declines to convert Defendants' motion into a motion summary judgment and considers only the allegations in Zelaya-Romero's Complaint and Amended Complaint.

### C. Exhaustion

Defendants assert that Zelaya-Romero's *Bivens* claims are barred by the PLRA because he failed to exhaust the administrative remedies available to him before bringing this suit.[103] But exhaustion is not an affirmative pleading requirement.[104] Moreover, Zelaya-Romero "has not pled that he did not exhaust."[105] Rather, his Complaint alleges that he brought the present action "after

---

Federal Rules of Criminal Procedure and the Local Rules. Such paper service must be documented by electronically filing proof of service.").

[99] *Hernandez*, 582 F.3d at 308 (quoting *McPherson v. Coombe*, 174 F.3d 276 (2d Cir. 1999)).

[100] *Rodriguez*, 2015 WL 857817, at *10 (citing *Stevens v. City of New York*, 12 Civ. 1918, 2012 WL 4948051, at *3 (S.D.N.Y. Oct. 11, 2012) (explaining that courts must "[b]alanc[e] the need to secure the PLRA's mandates of efficiency and early resolution of prisoner rights suits against litigants' interest in a just disposition of their suits").

[101] *Id.*

[102] *Id.*

[103] Defs.' Mem. in Supp. at 11.

[104] *See Jones*, 549 U.S. at 216.

[105] *Rodriguez*, 2015 WL 857817, at *9.

16

compl[e]ting the . . . ARP" process."[106]  Specifically, he states that he "went forward with the Administrative Remedy Process [on] 6/10/2020, with the BP-8 and they responded back to me" and that he "finish[ed] the Administrative Remedy Process with the BP-11 from [the] Central Office" on October 13, 2020."[107]  His Amended Complaint adds that he "completed all Administrative Remedies (BP-8, BP-9, BP-10, and BP-11, and the Tort Claim Process) looking [for] help for [his] health condition."[108]  He also submits, as attachments to his Complaint and Amended Complaint, copies of various ARP grievances regarding inadequate medical treatment during the relevant time period, as well as subsequent rejections and appeals pertaining to those grievances.[109]

While the Complaint and Amended Complaint are "not completely clear as to whether [Zelaya-Romero] properly grieved his claim[s]" pursuant to the ARP procedure, "that is not a valid basis for dismissal under *Jones*, which does not require that the plaintiff demonstrate exhaustion in the complaint."[110]  "[E]specially in light of the liberal *pro se* pleading requirements," Zelaya-Romero's statements in his Complaint and Amended Complaint "cannot be construed to mean that he did not pursue the proper avenues for exhaustion."[111]  Indeed, Zelaya-Romero "cannot be penalized for what he does not say in his pleading about his efforts to exhaust," particularly given there is "no indication" that his statements "represent the entirety of his efforts."[112]

---

[106] Compl. at 5-6.

[107] *Id.* at 6.

[108] Am. Compl. at 3, ¶ 15.

[109] *See* Compl.; Am. Compl.

[110] *Pratt*, 929 F. Supp. 2d at 318.

[111] *Rodriguez*, 2015 WL 857817, at *9.

[112] *Id.* at *3.

Thus, while Zelaya-Romero's Complaint and Amended Complaint "may suggest a failure to exhaust, such failure is not directly evident from the face of the complaint."[113] Accordingly, Defendants' motion to dismiss Zelaya-Romero's *Bivens* claims for failure to exhaust his administrative remedies is **DENIED**.

## III.   Leave to Amend

District Courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects but leave to amend is not required where it would be futile.[114] As to Zelaya-Romero's FTCA claims based on medical care provided at the MCC, the Court determines that these claims cannot be cured with an amendment.[115] As such, the Court declines to grant Zelaya-Romero leave to amend his Amended Complaint with respect to these claims only. Zelaya-Romero's *Bivens* claims against the Individual Defendants and the FTCA claims based on medical care provided at the MDC survive Defendants' Motions, so the Court need not address leave to amend with respect to those claims.

## CONCLUSION

In sum, Defendants' motion to dismiss is **GRANTED** as to Zelaya-Romero's FTCA claims based on lack of medical care at the MCC, but Zelaya-Romero's FTCA claims based on lack of medical care at the MDC survive. In addition, Defendants' motion to dismiss Zelaya-Romero's *Bivens* claims is **DENIED**.

---

[113] *Id.*

[114] *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011) ("Where a proposed amendment would be futile, leave to amend need not be given."); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

[115] *See Bergrin v. United States*, No. 19 Civ. 9681, 2022 WL 912280, at *14 (S.D.N.Y. Mar. 28, 2022) ("Courts have denied leave to amend as futile where the claims are barred by applicable statute of limitations.").

      The Clerk of Court is respectfully requested to terminate ECF No. 25.  The Clerk of Court is further directed to mail a copy of this Opinion and Order to Zelaya-Romero and note service on the docket.

      SO ORDERED.

Dated: September 30, 2025

      New York, New York

_____
DALE E. HO
United States District Judge
